## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| D & A PROPERTIES, LLC, and MICHAEL DORMAN, <br><br> Plaintiffs, <br><br> vs. <br><br> AUTO-OWNERS INSURANCE COMPANY, <br><br> Defendant. | No. C10-3061-PAZ <br><br> **ORDER ON MOTION FOR SUMMARY JUDGMENT** |

_____

The facts giving rise to this dispute are simple and straightforward. The plaintiffs own a building in Fort Dodge, Iowa. The building was insured by the defendant Auto-Owners Insurance Company from April 16, 2009, to September 27, 2009, against various risks, including physical damage caused by "windstorms." The plaintiffs submitted a claim under the policy asking to be reimbursed for damages to the south wall of the building allegedly caused by a windstorm on June 23, 2009. The defendant denied the claim, and the plaintiffs brought this lawsuit to collect under the policy.

On May 20, 2011, the defendant filed a motion for summary judgment (Doc. No. 20), arguing that the plaintiffs cannot prove the building was damaged by the June 23, 2009, windstorm. The motion was supported by a brief (Doc. No. 20-1), a statement of undisputed material facts (Doc. No. 20-2), and an appendix (Doc. No. 20-3). The plaintiffs' response to the motion was due on June 13, 2011, but no timely response was filed. On June 15, 2011, the court entered an order (Doc. No. 24) *sua sponte* extending to June 22, 2011, the deadline for responding to the motion. The court stated, "If the plaintiffs file no resistance to the motion by that date, the court shall grant without further notice the defendant's motion for summary judgment and dismiss this case with prejudice."

On June 17, 2011, the plaintiffs filed a motion (Doc. No. 26) asking the court to extend the deadline for responding to the motion for summary judgment to July 5, 2011, stating that counsel for the plaintiffs recently had been diagnosed with cancer and was undergoing daily treatment. On June 21, 2011, the court entered an order (Doc. No. 28) striking all deadlines in the case and scheduled a telephonic scheduling conference for July 12, 2011. After the scheduling conference, the court entered an order (Doc. No. 31) allowing the plaintiffs until July 26, 2011, to respond to the motion for summary judgment.[1] Again, no timely response was filed. On August 1, 2011, the court entered an order (Doc. No. 32) *sua sponte* allowing the plaintiffs until August 15, 2011, to respond to all pending motions.

On August 2, 2011, the defendant filed a motion (Doc. No. 33) asking the court to deem admitted all of the statements in its statement of undisputed material facts, and also asking the court to grant the defendant summary judgment and dismiss the case. The defendant noted that no response had been made to its statement of undisputed material facts or to its motion for summary judgment. On August 3, 2011, the plaintiffs filed a resistance (Doc. No. 34) to Docket Number 33, pointing out that the deadline for responding to all pending motions had been continued to August 15, 2011. *See* Doc. No. 32. The plaintiffs are correct. Docket number 33 is **denied**.

On August 15, 2011, the plaintiffs finally resisted the motion for summary judgment (Doc. No. 36), but in a one-page resistance supported by a one-page brief (Doc. No. 36-1). On August 18, 2011, the plaintiffs filed a second resistance to the motion for summary judgment (Doc. No. 37), supported by a supplemental brief (Doc. No. 37-1), a response

---

[1]This was a date suggested by plaintiffs' counsel, who promised that by that date he would either respond to the motion or have other counsel retained to respond to the motion.

to the defendant's statement of undisputed material facts (Doc. No. 37-2), a statement of additional material facts (Doc. No. 37-3), and an appendix (Doc. No. 37-4).[2]

In resisting the motion for summary judgment, the plaintiffs relied in large part on "Exhibit 6," a report prepared by the plaintiffs' expert, Kirk Macumber. The report was offered as an exhibit during Macumber's deposition, but no copy of the report was supplied to the court with the summary judgment papers. In the plaintiffs' resistance to the motion for summary judgment, they state that the exhibit is attached to the resistance, but it is not. At the telephonic hearing on the motion for summary judgment, the court pointed this out to counsel for the plaintiffs and gave the plaintiffs leave to file the exhibit. On September 15, 2011, instead of filing the exhibit, the plaintiffs filed a supplemental resistance (Doc. No. 43) acknowledging that the exhibit was not attached to the transcript of the Macumber deposition filed with the court, but again stating incorrectly that the exhibit was attached to the plaintiffs' resistance to the motion for summary judgment. This response to the court's request was curious, to say the least. However, the court has located a copy of the exhibit, which was attached to an erroneous filing made with the court made on September 1, 2011 (Doc. No. 40), entitled "Plaintiff's Disclosure of Expert Witness."[3] Attached to the filing is a report (Doc. No. 40-1) from Kirk Macumber, a professional engineer, dated March 10, 2011, relating to his investigation of damages to the plaintiffs' building. The court presumes this report is "Exhibit 6," and will consider the report as part of the summary judgment record.

In ruling on the motion for summary judgment, the court will apply the standards applicable to motions for summary judgment in federal court. In *Timmerman v. Eich*, ___

---

[2] The plaintiffs' appendix is identical to the defendant's appendix. They both contain a copy of the Macumber deposition, a copy of portions of the insurance policy, and copies of two petitions filed in state court before the case was removed to this court.

[3] Expert witness designations generally are not to be filed with the court. *See* LR 26.c. Here, it was fortunate that the plaintiffs filed their designation. In light of this designation, the defendant's motion (Doc. No. 17) to strike the plaintiffs' earlier expert witness designation is **denied** as moot.

F. Supp. 2d ___, No. C09-3072-MWB, 2011 WL 4018079, at **6-7 (N.D. Iowa Sept. 12, 2011), Judge Mark W. Bennett of this district explained those standards as follows:

> Motions for summary judgment essentially "define disputed facts and issues and … dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses…."). Summary judgment is particularly appropriate when only questions of law are involved. *See, e.g.*, *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir.2006). Where questions of fact are at issue, summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir.2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").
>
> A fact is material when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir.2005) (stating genuineness depends on "whether a

reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir.2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F .3d 953, 957 (8th Cir.1995))).

> As the Eighth Circuit Court of Appeals has explained, "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, --- U.S. ----, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S.Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.
>
> *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir.2011) (*en banc*).

As previously noted, the facts in this case are not complicated. The plaintiffs own a building in Fort Dodge, Iowa, which the defendant insured against various risks, including damage from "windstorms." In this lawsuit, the plaintiffs assert that on June 23, 2009, a windstorm damaged the south wall of the building. The defendant, in its motion for summary judgment, alleges that the plaintiffs cannot prove that the building was damaged by that windstorm. If the defendant is correct, the defendant is entitled to summary judgment. In ruling on this motion, the court will consider three submissions from the parties: (1) the defendant's statement of undisputed material facts (Doc. No. 20-2); (2) the transcript of the Macumber deposition (Doc. No. 20-3, pp. 7-36); and (3) the Macumber report dated March 10, 2011 (Doc. No. 40-1).[4]

Because the plaintiffs did not file a timely response to the defendant's statement of undisputed material facts, those facts are, by rule, deemed admitted. *See* LR 56.b ("The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact."). Although the plaintiffs did, eventually, respond to the defendant's statement of undisputed material facts, they did so

---

[4]The plaintiffs' statement of additional material facts (Doc. No. 37-3) simply cites to Macumber's deposition and report, and adds nothing to the analysis.

on August 18, 2011, three days late. The original deadline for filing a response was June 13, 2011. When no response was filed, the court *sua sponte* extended the deadline to June 22, 2011. Before that deadline expired, the plaintiffs asked for an extension, and the court reset the deadline for July 26, 2011. The plaintiffs failed to meet this deadline, so the court again granted a *sua sponte* extension to August 15, 2011, and the plaintiffs again missed the deadline. Because of the plaintiffs' untimely response, the facts recited in the defendant's statement of undisputed material facts are deemed admitted.

The defendant's statement of undisputed material facts does not, however, go far enough to establish that the defendant is entitled to summary judgment.[5] To rule on the motion, the court must consider also what is and is not established by Macumber's report and deposition testimony. The question is whether Macumber's report and the deposition testimony, taken together, contain evidence of specific facts sufficient to create a genuine issue of material fact for the jury to decide. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Macumber is a licensed professional engineer. His report (Doc. No. 40-1) is two pages long, with a one-page attachment showing weather data for June 23, 2009, and five additional pages of calculations. Macumber begins the report by stating that his assignment was to "assess the cause of damage to the South wall of [the] building." *Id.*, at p. 1. He writes, "It was reported that on June 23, 2009, a thunderstorm occurred in Ft. Dodge area." *Id*. He then refers to data from the local airport indicating that there were wind gusts of up to 39 miles per hour in the area that day. He concludes, "After this storm system passed, the South wall experienced severe deflection to the center of the

---

[5]In the untimely responses filed by the plaintiffs (Doc. No. 37-2), they admit without qualification 13 of the 18 requests, admit three of the requests with qualifications, and deny the remaining two requests. The "undisputed material facts" to which qualified responses are given are not material to the court's analysis. The two "undisputed material facts" that were denied both involve the interpretation of Macumber's deposition testimony, a subject on which the court will rely on its own reading of the deposition.

wall." *Id*. Specifically, he measured the south wall of the building and found "almost an 8" separation of the wall from the second level on the interior of the building." *Id*., at p. 2. He further states, "Exterior damage to the wall can be see be seen," and "[t]he second floor of the building is self-supporting and the wall only supports 9' of roof load." *Id*. He concludes his report with the following:

> It is my opinion that since the wall does not have significant gravity loads applied to it, 9' of roof load and self-weight, that a lateral load must have been applied to the wall to create this amount of deformation. Calculations in Appendix B show that the main wall could withstand a wind speed of 41 mph while the pilasters would only resist a wind speed of 20 mph. These calculations utilize the 8" block wall and did not take into consideration any strength from the brick veneer. Using the maximum gust speed from the weather data in Appendix A, it is my opinion that this was a main contributor to the lateral displacement of this wall.

*Id*.

Macumber's deposition took less than 40 minutes. The transcript of Macumber's testimony (Doc. No. 20-3, pp. 7-36) is 25 pages in length. He testified that he was hired by the owners of the building to determine the cause of structural issues with the south wall on the building, and to develop a plan to repair the building. *Id*., at pp. 11-12. He began the assignment by going out to the building, mapping it out, and taking measurements and photographs. When he went out to the building, he observed an "obvious bulge to the south wall." *Id*., at p. 14. The bulge (or "deflection") was in the center of the wall, and was outward, or toward the south. *Id*. He also observed "aging issues with the building," including grout in need of repair, settlement cracks, and missing bricks. *Id*., at p. 15.

Macumber was asked "when did that eight-inch movement occur?" *Id*., at p. 16. He responded, "According to what I had, the information that I had, was that I believe it occurred – it was that – oh, what was that specific date? Was it June 23rd? Is that what's in the report? From a storm that blew through Fort Dodge at that time." *Id*., at pp. 16-

17. When asked to clarify if the entire eight-inch deflection occurred on June 23, 2009, Macumber responded, "That's the way it was presented to me, yes." *Id.*, at p. 17. When asked if he had any independent verification that all of that movement occurred on that day, he answered, "No." *Id*. When asked if there was any way to establish how much movement occurred that day, he responded that there was not, and that he had just assumed that the wall was relatively straight before that date. *Id.*, at pp. 17-18.

Macumber testified that he determined the wind speed that day from weather data he obtained from the local airport. The weather report (Doc. No. 40-1, p. 4), indicates "Wind Speed" of "4 mph (SE)," "Max Wind Speed" of "23 mph," and "Max Gust Speed" of "39 mph." *Id*. Macumber first testified that this meant the wind was coming out of the northwest (Doc. No. 20-3, p. 21), but later in his deposition, he admitted that he did not know the direction of the wind that day (*id.*, at p. 22). He also admitted that without that information, he could not determine whether the wind that day could have pushed the south wall outward. *Id.*, at p. 23. Furthermore, he did not know whether there had been winds in Fort Dodge of the same speeds or higher at earlier times during the life of the building. *Id.*, at p. 30.

The central omission from this evidence is any proof of a causal link between the wind storm on June 23, 2009, and the damage to the south wall of the building. Macumber began his analysis with the assumption that the south wall of the building was not deflected prior to that date, and that the entire eight-inch deflection occurred on that date. He thereby assumed away the central issue in the case before conducting any analysis. In fact, from the record in this case, the damage to the south wall of the building could have occurred entirely before or entirely after the period of coverage provided by the insurance policy. Because the court has been presented with no evidence to create a genuine issue of fact on causation for a jury to decide, the defendant's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (Doc. No. 20) is **granted**, and judgment will enter in favor of the defendant and against the plaintiffs. The defendant's motion to have the statements in its statement of undisputed material facts in support of its motion for summary judgment deemed admitted (Doc. No. 33) is **denied**. The defendant's motion to strike the plaintiffs' expert designation (Doc. No. 17) is **denied as moot**.

**IT IS SO ORDERED.**

**DATED** this 30th day of September, 2011.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT